UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) ) ) | |
| VS. ) ) | CRIMINAL NO. 03-10377-WGY |
| ERIC LINO, ) ) Defendant. ) | |

## DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE RELATING TO MATTERS THAT OCCURRED OUTSIDE THE TIMEFRAME OF THE SUPERSEDING INDICTMENT

The Defendant, Eric Lino, moves that this Court preclude the Government from introducing any evidence relating to matters occurring outside the timeframe of the superseding indictment. This includes but is not limited to statements, seized narcotics, audio recordings, and reports.

There are two counts in the superseding indictment – conspiracy to distribute cocaine and distribution of cocaine. Each count describes a timeframe lasting approximately two years, from June, 2001 to June, 2003. The count for distribution identifies a specific date, i.e., June 18, 2003.

The Government has indicated that at trial it intends to introduce the following:

1. Evidence regarding the seizure of cocaine on July 31, 2003;

2. Transcripts of a tape recorded telephone conversation between the Defendant and Nicole Roderiguez, dated July 31, 2003.

3. An undated transcript of a tape recorded telephone conversation between the Defendant and "Amanda."

4. An undated transcript of a tape recorded telephone conversation between the Defendant and "Rose."

*YOUNG, D.J.*
*MOTION ALLOWED*
*BY the Court*
*[signature]*

-2-

1.    <u>The July 31, 2003 Seizure of Cocaine</u>

All of these events occurred after the timeframe specified in the indictment.[1] The cocaine seizure of July 31, 2003 was the result of a tip received by Detective Jeffrey Silva of the New Bedford Police Department. According to Detective Silva's affidavit,[2] on that date an anonymous source (AS) informed the New Bedford Police that he saw Nicole Roderiguez hide "something" in a trash container near the Ideal Flooring Company in East Falmouth, Massachusetts. The AS retrieved the "something," which turned out to be a bag of alleged cocaine. A short while later the AS saw Nicole Rogeriguez return in a purple Honda. Ms. Roderiguez allegedly noticed the AS watching her and drove away. The AS called the police, who determined that the purple Honda was registered to Nicole Rogeriguez. The police took the AS to 110 Seabrook Drive, where he allegedly identified Ms. Roderiguez.

The seizure of the cocaine should be barred from evidence because it occurred outside the timeframe specified in the superseding indictment. The purpose of an indictment is to describe "... the elements of the offense charged and [to fairly inform] a defendant of the charge against which he must defend, and, second, [to enable him] to plead an acquittal or conviction in bar of future prosecutions for the same offense." <u>Hamling v. United States</u>, 418 U.S. 87 (1974). In this case the Government chose the timeframe specified, i.e. June of 2001 to June of 2003. The Defendant should not be put in the position of having to prepare defenses and arguments against evidence that relates to matters which did not occur during the timeframe specified in the indictment. If the rule were otherwise, the Government would be free to search out and introduce evidence from *any* time period, leaving the Defendant unable to rely on the indictment to prepare his defense.

---

[1] The undated phone calls were made from jail, which the Defendant did not enter until July 30, 2003.
[2] See attached affidavit.

-3-

Although some allowance might be made for the "elastic, sprawling and pervasive offense"[3] of conspiracy in terms of specifying particular dates within the timeframe described in the indictment (See ,U.S. v. Gonzalez, 915 F.2d 1557 (1st Cir. RI) (1990)), the Government in this case seeks to introduce evidence of events that occurred entirely outside of the timeframe in the superseding indictment. Furthermore, the Government sought and received a superseding indictment that contained the *same* timeframe as the first indictment.[4] The Government knew about the July 31, 2003 cocaine seizure before they sought the superseding indictment, yet chose not to expand the timeframe to include it. Because of this, the Government should not be afforded any flexibility in terms of the timeframe during which the conspiracy allegedly unfolded. The July 21, 2003 cocaine seizure is therefore beyond the scope of the superseding indictment and must be barred from introduction into evidence.

Assuming, *arguendo,* that the July 31, 2003 cocaine seizure might somehow be considered part of the conspiracy, the alleged statements made by Nicole Roderiguez are nevertheless inadmissible.[5] They are hearsay. The alleged statements are not admissible as statements of a co-conspirator pursuant to F.R.E. 801(d)(2)(E), which provides that "...a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy [is not hearsay]" because they were not made in furtherance of any conspiracy. (It bears repeating that the statements were not made during the "course" of the alleged conspiracy). In addition, there is no evidence that Nicole Roderiguez was a co-conspirator, which obviates in the first place any analysis under F.R.E. 801(d)(2)(E).

Finally, and perhaps most importantly, there is no reliable evidence under any theory that would connect the cocaine to the Defendant. It was Nicole Roderiguez, not Eric Lino, who was observed putting the alleged cocaine in the dumpster on July 31, 2003, a date on which Mr. Lino was in jail. The statements allegedly made by Nicole

---

[3] United States v. Broce, 488 U.S. 563, 583 (1989).
[4] The superseding indictment differs from the original indictment only in terms of the weight of cocaine the Government seeks to attribute to the Defendant.
[5] These statements include, at a minimum, those she allegedly made to the New Bedford Police on July 31, 2003, and those she allegedly made to Carl Romiza.

-4-

Roderiguez are inadmissible hearsay, and cannot be used to establish any supposed connection between the cocaine and Mr. Lino. (The statements themselves do not establish a connection between the Defendant and the cocaine.) As such, all evidence concerning the seizure of cocaine on July 31, 2003 is irrelevant, extraneous, and prejudicial.

2.   The Telephone Conversations

For largely the same reasons the transcripts of the three recorded telephone conversations should be precluded from evidence. First, as with the seizure of the cocaine, they happened beyond the timeframe specified in the superseding indictment. Second, they are hearsay. And again, none of the statements contained in the transcripts can be introduced under F.R.E. 801(d)(2)(E), since none of the statements are made in furtherance of any supposed conspiracy. In addition to that, they are irrelevant.

## CONCLUSION

For the foregoing reasons, the Defendant requests that the Court preclude the Government from introducing into evidence all evidence relating to the seizure of cocaine on July 31, 2003, and all evidence relating to the three (3) transcripts of recorded telephone conversation.

Respectfully submitted,
FOR THE DEFENDANT,

Barry P. Wilson
BBO# 529680
LAW OFFICES OF BARRY P. WILSON
240 Commercial Street
Suite 5A
Boston, Massachusetts 02109
(617) 248-8979

Dated: 11/11/04

# Affidavit in Support of Search Warrant

I, Jeffrey P. Silva, being duly sworn do depose and say that I am a Detective Sergeant with the New Bedford Police Department and a deputized Federal Task Force Agent with the United States Department of Justice Drug Enforcement Administration. I have been a law enforcement officer for (10) years and am currently assigned to the Drug Enforcement Administration's New Bedford Resident Office where I conduct narcotics investigations, and have done so for the past (2) years. I have worked as a Detective and/or a Detective Sergeant for the past (6) years, during which time I have conducted numerous investigations for violations of all types, including major crimes against people and property, to include narcotics investigations.

I have attended the (18) week Municipal Police Officer Class run by the Massachusetts State Police under the auspices of the Massachusetts Criminal Justice Training Council, numerous specialized courses on criminal procedure, criminal law, search and seizure, and statutory law taught by the Massachusetts Criminal Justice Training Council and/or its instructors at off site training facilities, a (24) hour Task Force Agent training, a (40) hour asset forfeiture/narco-currency training, a (32) hour El Paso Intelligence Center Narcotics Interdiction training, a (32) High Intensity Drug Trafficking Area training, and an (80) National Drug Unit Commander's Academy, all of which were instructed by the United States Department of Justice Drug Enforcement Administration.

I have executed and assisted on numerous executions of search and arrest warrants, have made numerous seizures of narcotics, narco-currency and weapons, have cultivated informants, have worked in an undercover capacity as a purchaser and as a distributor of narcotics, have made numerous arrests for violations of the Controlled Substances Act, and am familiar with the jargon associated with the narcotics trade.

After conducting a (6) month investigation into the Eric LINO drug organization, which included surveillance, various investigative techniques and undercover purchases of cocaine, agents (Task Force and Special) from the Drug Enforcement Administration and detectives from the Falmouth and Mashpee Police Department proceeded to 110 Seabrook Drive in East Falmouth, MA to attempt to gain consent to search the room in that residence that the investigation had revealed that Eric LINO had stayed in with his girlfriend, Nicole RODERIGUES. Eric LINO had been unexpectedly violated and sent to jail for probation violations, and as a result, the federal investigation into his organization was prematurely and unavoidably terminated.

Printed Name of Affiant                    Signed Under the Penalties of Perjury

Jeffrey P. Silva                           _____

Sworn and Subscribed to Before             Date

_____
Signature of Justice, Assistant Clerk or
Clerk Magistrate

Page 1 of 4

## Affidavit in Support of Search Warrant

During the (6) month investigation into the Eric LINO organization, over (70) grams of cocaine were sold to an undercover officer, and an observation of at least (500) additional grams of cocaine was made by the undercover officer on one of the undercover purchases. In addition, Eric LINO was determined to have no legitimate employment, however he had amassed substantial assets and sustained a lifestyle that was well beyond the boundaries of what he could legitimately sustain.

At approximately 4:00PM, on 7-31-2003, this affiant and Falmouth Police Detective Robert Murray were given written consent to search 110 Seabrook Drive from the rentor, Diane Caissie. During that time, the rentor, along with her boyfriend, and her daughter, Nicole RODERGUES, were present. During the consent search, numerous items of narcotic paraphernalia were located, and Nicole RODERIGUES stated that she knew what her boyfriend Eric LINO did, and that she did not condone it, but that she loved him. She stated that she felt people had a right to do whatever they wanted to do, even if that meant dealing drugs, but that she did not agree with it. When searching her room, Nicole RODERIGUES stated that there "were no drugs" there and that Eric LINO had a feeling that he was going to be surrendered for probation violations so that "whatever he had, he put in places that he thought were safe". When asked where these places were, and what "things" she was referring to, Nicole RODERIGUES stated she did not know.

At approximately 5:30PM on 7-31-2003, Falmouth Police Detective Robert Murray received information detailing that that at approximately 3:20PM on 7-31-2003, Nicole RODERIGUES walked to the area of IDEAL FLOORING COMPANY in East Falmouth and hid something a trash container. Nicole RODERIGUES then walked back in the direction of the rear of her house at 110 Seabrook Drive, at which time Detective Murray's informant looked under the container where it had just seen Nicole RODERIGUES appear to be hiding something, and in the exact location, the informant found a clear, plastic bag containing a white, powdery substance and a black, Pocket-Tech 150 gram scale.

A short while later, the informant stated that it observed Nicole RODERIGUES return to the trash container operating a purple, Honda bearing Massachusetts Registration 1662KS. The informant stated that Nicole RODERIGUES was accompanied by a white truck marked with the name "Rick Kempton Drywall". The informant stated that Nicole RODERIGUES noticed it looking at her, so it told her that it called the police. At that time Nicole RODERIGUES and the white truck marked with "Rick Kempton Drywall" left the lot.

Printed Name of Affiant

Jeffrey P. Silva

Sworn and Subscribed to Before

Signed Under the Penalties of Perjury

Date

Signature of Justice, Assistant Clerk or Clerk Magistrate

Page 2 of 4

# Affidavit in Support of Search Warrant

The informant subsequently turned the plastic bag with suspected cocaine along with the scale over to Falmouth Police Detective Murray. Detective Murray then conducted a registration inquiry into the license plate given to him by his informant and learned that the vehicle was listed to Nicole RODERIGUES of 110 Seabrook Drive. The informant was subsequently transported back to 110 Seabrook Drive where it positively identified Nicole RODERIGUES as the same person who it saw hide the suspected cocaine by the trash container.

Upon being transported to Falmouth Police Headquarters, Nicole RODERIGUES was found with an envelope in her possession. Listed on the envelope were the following:

CALL STORAGE
GET KEY FROM PEWE
CALL NEXTEL AND SHUT PHONE OFF + CHANGE ADDRESS
CALL DRUE TO FIND OUT ABOUT CHECK
#1 FIND SKIP & FRANK SILVESTER
CALL RICHARD BARRY

During the time that Nicole RODERIGUES was being booked, agents from the DEA along with Mashpee Police Detectives Kevin Frye and John Hanafin also conducted a consent search at 300 Falmouth Road, Apartment 16-D in Mashpee, MA. During the search, various documents in the name of Eric LINO were recovered which supported his ownership of numerous assets, along with a signed receipt indicating advanced cash payment in advance until 2005 for the Mashpee Sun Self Storage facility for Unit F-14.

Agents from the DEA along with Mashpee Police Detectives subsequently proceeded to the Mashpee Sun Self Storage and spoke to the managers on duty. The managers were then shown color photographs of Nicole RODERIGUES and Eric LINO. The managers on duty did not identify Nicole RODERIGUES, however they both identified Eric LINO as having paid cash, in advance, through 2005, for the rental of storage unit F-14. They added that there was also a unit being rented by Robert, aka Adam LINO in the storage facility as well. The managers on duty also stated that they had observed Eric LINO placing a dirt bike and jet-ski type vehicles into the storage facility. These items were consistent with the assets that were identified as having been amassed by LINO but that he could not justify were it not for the proceeds made from his narcotics distribution organization.

Printed Name of Affiant          Signed Under the Penalties of Perjury

Jeffrey P. Silva                 _____

Sworn and Subscribed to Before   Date

_____   _____
Signature of Justice, Assistant Clerk or
Clerk Magistrate

Page 3 of 4

## Affidavit in Support of Search Warrant

Based on the (6) month investigation into the Eric LINO organization, the written statement of a cooperating witness delineating the narcotics distribution ring of Eric LINO as well as the straw purchase of numerous, illegally obtained assets, the undercover purchases of over (70) grams of cocaine, the undercover observation of approximately (500) grams of cocaine, the recovery of (115) grams of cocaine from Eric LINO's girlfriend, Nicole RODERIGUES, the statements of Nicole RODERIGUES further identifying Eric LINO as a drug dealer, the unexplained assets owned by Eric LINO, along with the seizure of documents indicating the existence of a 2 year, pre-paid storage facility in the name of Eric LINO where the management staff identified numerous assets being stored by Eric LINO, the affiant believes that probable cause exists at the Mashpee Sun Self Storage Facility located at 868 Falmouth Road (Rt 28) in Mashpee, MA and that there will be: items obtained in the commission of a crime, items intended for use, or which have been used, as a means or instrumentality of committing a crime, including but not limited to items used in the concealment of a crime, articles which are unlawful or which are possessed or controlled for an unlawful purpose.

This includes but is not limited to any narcotics in violation of MGL Chapter 94C, and any all documents, electronic and/or magnetic media, drug paraphernalia, packaging materials, scales, currency derived from illegal drug trafficking, ledgers, records and/or assets or conveyances derived from drug trafficking activities.

There is no indication that anyone will be present and that a NO-KNOCK provision of the warrant would provide any substantial safety benefit to the officers of the public. In addition, there is no reason to believe that anyone will be present, therefore there is no need for an ALL PERSONS PRESENT provision to be issued. Based on the time that the affiant is preparing this affidavit, however, and since entry is required prior to the general opening of the facility when evidence could be lost or destroyed by a co-conspirator, the affiant does request a provision to allow NIGHTTIME ENTRY.

Printed Name of Affiant

Jeffrey P. Silva

Signed Under the Penalties of Perjury

_____

Sworn and Subscribed to Before

Date

_____

Signature of Justice, Assistant Clerk or Clerk Magistrate

_____

Page 4 of 4